**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NORMAN SALLITT, JR.,** | : | No. 3:07cv361 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **BARRY STANKUS, LUZERNE** | : | |
| **COUNTY, and GEORGE KAMAGE, JR.,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

_____Before the court for disposition is the defendants' motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure and the plaintiff's motion for attorney fees and costs. The motions have been fully briefed, and they are ripe for disposition.

**Background**

Plaintiff Norman Sallitt, Jr. was a deputy sheriff for Luzerne County, Pennsylvania. He filed suit asserting that Defendant Barry Stankus, Luzerne County's elected sheriff, and his chief deputy, Defendant George Kamage, Jr., retaliated against him for supporting Stankus's political opponent in the election for sheriff. (See Doc. 1-2, Complaint). As part of the retaliation plaintiff asserts that he was suspended from his position for nine (9) months. Plaintiff asserts that because of the suspension he lost opportunities to obtain higher paying employment with the Pennsylvania State Police and the United States Marshals Service.

The defendants eventually allowed plaintiff to return to work. Ultimately, however, they terminated his employment. Plaintiff thus initiated the instant civil rights action pursuant to 42 U.S.C. § 1983. He asserts that defendants' actions in suspending and terminating him violated his First and Fourteenth Amendment rights.

A jury trial on this matter commenced on March 17, 2009 and the jury returned its verdict on March 25, 2009.  (Doc. 89, Verdict).  The jury found that defendants Luzerne County and Barry Stankus had violated plaintiff's due process rights in connection with his suspension.  (Id.)  The jury awarded past economic damages $25,000.00, future economic damages of $100,000.00, non-economic damages of $100,000.00 and punitive damages against Defendant Stankus in the amount of $155,000.00.  (Id.) [1] The jury found no liability on the part of Defendant Kamage.  The jury further found for the defendants on plaintiff's First Amendment freedom association claim involving both plaintiff's suspension and termination. (Doc. 89, Verdict at ¶¶ 3, 5, 7).  After the trial, the defendants filed the instant motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rule of Civil Procedure.  Additionally, the plaintiff moved for an award of attorney's fees and costs.  The motions have been briefed, and they are ripe for disposition.

**Jurisdiction**

Plaintiff filed his complaint pursuant to 42 U.S.C. § 1983 for constitutional violations.   We thus have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

Two motions are before the court.  We will address them separately.

**A.  Motion for judgment as a matter of law**

**Standard of review**

Defendants seek judgment as a matter of law pursuant to Federal

---

[1]The court will address the facts in more detail and with citations to the record where appropriate below.

Rule of Civil Procedure 50 on several grounds.  "Under Rule 50, a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 149 (2000) (quoting FED. R. CIV. P. 50(a)(1)).  The court grants this motion "only if 'viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury could find liability.'" Buskirk v. Apollo Metals, 307 F.3d 160, 166 (3d Cir. 2002) (quoting Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993)).  Courts apply the same standard to motions made before the jury verdict pursuant to Rule 50(a) and after the jury verdict made pursuant to Rule 50(b).  See McDaniels v. Flick, 59 F.3d 446, 453 (3d Cir. 1995).

**Discussion**

The defendants raise several issues that we will discuss separately.

**I. Punitive damages**

As noted above, the jury awarded plaintiff $155,000.00 in punitive damages against Defendant Barry Stankus.  The defendants' first argument is that the imposition of punitive damages against Defendant Stankus is an error of law.  Defendants raise the following arguments with regard to the punitive damages:   1) punitive damages are inappropriate against Defendant Stankus because plaintiff sued him, and he acted in, his official capacity; 2) no evidence was presented to the jury to determine the amount of punitive damages and the punitive damages award is against the weight of the evidence; and 3) the punitive damages are too high

based on recent Supreme Court decisions.  We will address these issues *in seriatim*.        **a.  Official capacity**

Defendants first argue that Defendant Stankus cannot properly be found liable for punitive damages.   Defendants argue as follows: Plaintiff sued Stankus in Stankus's official capacity only.  Suing Stankus in his official capacity as the Sheriff of Luzerne County is equivalent to suing Luzerne County.  Luzerne County cannot be held liable for punitive damages.  Therefore, Stankus cannot be found liable for punitive damages.  We are unconvinced by defendants' argument.

Initially, we find that the defendants have waived this issue. A party cannot raise an issue after a trial if it did not raise that issue preverdict. Wilson v. Vt. Castings, Inc., 170 F.3d 391, 395 (3d Cir. 1999); Williams v. Runyon, 130 F.3d 568, 571-72 (3d Cir. 1997); see also FED. R. CIV. P. 50 cmt. (2006) ("[T]he Rule 50(b) motion . . . can be granted only on grounds advanced in the preverdict motion").  In the instant case, the defendants never raised this issue until its post-verdict motions.  Before the verdict, the defendants did not seek to dismiss the punitive damages claim on the basis that the individual defendants were sued in their official capacity and as such punitive damages were inappropriate.  The defendants have thus waived this issue, and it will be denied.

If defendants had raised the issue prior to the verdict, it would have been dealt with simply.  It is evident from the course of proceedings that the plaintiff sued Defendant Stankus in his individual capacity.  In fact, if this was not the plaintiff's intent, the presence of Stankus as a defendant would have been wholly unnecessary and redundant.  See Carver v. Foerster, 102 F.3d 96, 97 n.1 (3d Cir. 1996) (explaining that claims against

4

a county employee in his official capactiy "are in fact claims against the County"). In other words, the mere presence of Stankus as a defendant indicates the plaintiff's intention to sue him in his individual capacity. Defendants never moved to dismiss Stankus on the basis that he was sued only in his official capacity, indicating that they also treated him as having been sued in his individual rather than official capacity. Additionally, the verdict form contained a punitive damages question applicable to Defendant Barry Stankus but not applicable to Luzerne County. (Doc. 89, Verdict at ¶ 11). The fact that the verdict form did not contain a question regarding punitive damages and Luzerne County indicates that the parties knew which parties could be held liable for punitive damages -- defendants sued in their individual capacities -- and which could not -- the county or defendants sued in their official capacities.

Moreover, defendants argue that the individual defendants only acted in their official capacities in dealing with the plaintiff and therefore could not be held liable in an individual capacity. Defendants argue apparently that Defendant Stankus's suspension of the plaintiff was an action taken in his official capacity as the sheriff. Therefore, he cannot be held liable in his individual capacity. This assertion is not an accurate statement of the law. State officials may in fact be held liable in their individual capacities for actions they take in their official capacities. Hafer v. Melo, 502 U.S. 21, 27 (1991).

### b. Evidence to determine amount of punitive damages

Next, the defendants argue that the punitive damages verdict must be dismissed because the jury had no evidence upon which it could determine an appropriate amount to punish Defendant Stankus.

5

Defendants argue that the court should have allowed a separate hearing to determine the net worth of Defendant Stankus so the jury could take that in consideration in determining the punitive damages award. We are unconvinced by the defendants' argument.

Defendants cite no authority for the proposition that the plaintiff must present evidence of net worth in order to allow punitive damages. They also present no authority that requires the court to hold a separate hearing on punitive damages. The court did not limit the defendants' ability to present evidence in the trial regarding Defendant Stankus's net worth or any other factor affecting punitive damages. We will not dismiss the award of punitive damages merely because the defendants failed to present the evidence it wanted jury to have.

In a related argument, the defendants argue that the award of punitive damages violates Defendant Stankus's due process rights. Defendants argue that the award is grossly disproportionate to Stankus's conduct. In support of this position, the defendants cite <u>Willow Inn, Inc. v. Public Serice Mut. Ins. Co.</u>, 339 F.3d 224 (3d Cir. 2005).

The law provides that punitive damages cannot be awarded in a section 1983 case unless there is more than a mere violation of a right justifying compensatory damage. The defendant must have acted with a certain state of mind, that is reckless or callous disregard for the rights of others. <u>Keenan v. City of Philadelphia</u>, 983 F.2d 459, 469-70 (3d Cir. 1992). <u>Keenan</u> explains as follows:

> Punitive damages in § 1983 cases are available where the defendants have acted with a "reckless or callous disregard of, or indifference to, the rights and safety of others." <u>Bennis v. Gable</u>, 823 F.2d 723, 734 (3d Cir.1987) (quoting <u>Smith v. Wade</u>, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632

6

(1983)). However, "punitive damages in general represent a limited remedy, to be reserved for special circumstances." Savarese v. Agriss, 883 F.2d 1194, 1205 (3d Cir.1989) (citing Cochetti v. Desmond, 572 F.2d 102, 105-06 (3d Cir.1978)). "[D]espite its utility as a deterrent, the punitive damage remedy must be reserved, we think, for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." Cochetti, 572 F.2d at 106.

Id.

In order to pass constitutional muster, punitive damages "must not be disproportionately excessive to the degree of the reprehensibility of the defendant's conduct and the harm that conduct visited upon the plaintiff[.]"[2] Willow Inn, 399 F.3d at 230.

The court is satisfied that the evidence supports the award of punitive damages in the instant case. The jury concluded that Defendant Barry Stankus had deprived plaintiff's due process rights in connection with the suspension of his employment between April 2004 and January 2005. (Doc. 89, Verdict at ¶ 1). The plaintiff's trial testimony revealed that Stankus refused to inform the plaintiff of the reason for his suspension. (Doc. 121, N.T. 3/18/09, at 34-35, 53). Officials representing plaintiff's labor union were also unable to determine the reason for the suspension. (Doc. 123, N.T. 3/20/09, 79-81, 82-83; Doc. 122, N.T. 3/19/09, 58, 65-66, 68, 78-79). Defendants only told them that "it's under investigation." (Doc. 123, N.T. 3/20/09 80-81; Doc. 122, N.T. 3/19/09 68, 78-79).

Another employee who Stankus suspended, Michael Barna testified

_____

[2]A third factor is "the state legislature's judgment of the appropriate sanctions for the conduct." Willow Inn, 399 F.3d at 230. We are not dealing with punitive damages awarded under state law; therefore, we need not address this issue.

that Stankus never told him the reason for his suspension either.  (Doc. 121, N.T. 3/18/09 at 221-222).  Barna further indicated that Stankus told him that if he and the others were ever disloyal to him he would "blow up" their houses with their families inside.  (Doc. 121, N.T. 3/18/09 at 223). This evidence demonstrates malice or at least a reckless disregard for the rights of others on the part of Defendant Stankus.

Malice or reckless disregard on Stankus's part is also established through the testimony of Defendant Kamage who revealed that Stankus indicated that he intended to "destroy people" and "ruin lives."  (Doc. 123, N.T. 3/20/09 at 147).   In fact, the testimony revealed that the fact that defendants never told plaintiff the reason for his suspension, caused the Pennsylvania State Police to take him out of consideration for a position.[3] This evidence all supports the jury's award of punitive damages. Therefore, the defendants' argument on this point is without merit.

### c. Excessiveness of the punitive damages award

Defendants also argue that the jury awarded an excessive amount of punitive damages.  Defendants assert that the Supreme Court ruling in Exxon Shipping Co. v. Baker, - - U.S. - - , 128 S. Ct. 2605 (2008), requires that punitive damages should be awarded in a less than 1:1 ratio to compensatory damages.  Plaintiff argues that the amount of compensatory damages in the instant case was $100,000.00, therefore the award of $155,000.00 in punitive damages exceeds the 1:1 ratio.  We are unconvinced.    The compensatory damages awarded by the jury, in fact,

---

[3]Defendant Stankus told the jury that he had told plaintiff the reason for his suspension.  The jury could conclude that this statement was a fabrication and that the defendant had a consciousness that he did wrong.

amount to $255,000.00.  (Doc. 89, Verdict at ¶ 9).  Therefore, the punitive damages award is less than the compensatory award and the ratio is appropriate under Exxon.[4]

## II.  "Back pay/front pay"

The next section of defendants' brief attacks the jury's award of past and future compensatory damages.  In this section of their brief, the defendants present several different arguments that overlap.  We have attempted separate the arguments and break out the issues in order to address them in an orderly fashion.

Defendants basically argue four matters: 1) whether the award of any economic damages at all was against the weight of the evidence; 2) whether the court erred in ruling on motions in limine regarding the admission of evidence of lost opportunities from the Pennsylvania State Police and the United States Marshals Service; 3) whether the court should have precluded the plaintiff's economic expert from testifying and whether the expert's testimony was too speculative; and 4) whether the court erred in denying defendants' proposed jury charge with respect to whether plaintiff possessed a property interest in employment with the Pennsylvania State Police.  We will address these issues in turn.

### a.  The award of economic damages

First, defendants argue that plaintiff suffered no economic damages and should not have been awarded back pay and front pay because the defendants suspended him *with pay* and ultimately brought him back to

_____

[4]Because the punitive damages meet the requirements of Exxon, the issue of whether Exxon actually controls the punitive damages award is moot.

work.  Defendants' argument lacks merit because the jury did not award back pay and front pay.  The jury awarded "past economic damages" and "future economic damages."  (Doc. 89, Verdict at ¶¶ 9(A) and (B)).[5]  As discussed more fully below, testimony at the trial established that plaintiff's prospects of obtaining employment with the Pennsylvania State Police and the United States Marshals Service were impaired by his suspension.  Plaintiff argued that this caused an economic loss.  The jury agreed and awarded him damages.   Accordingly, the award of economic damages is not against the weight of the evidence.

### b.  Other employment opportunities

Next, the defendants argue that it was improper for the court to allow testimony of potential employment with the Pennsylvania State Police and the United States Marshals Service.  Defendants filed motions in limine to preclude this testimony, and the court denied the motions.  (Doc. 40, Memorandum dated 12/11/08 denying defendants' motions in limine).  Defendants argue that these potential employers disqualified plaintiff from employment due to reasons unrelated to plaintiff's suspension. Therefore, defendants argue that they should not be held liable for any lost employment opportunity.

Defendants' position is without merit.  Plaintiff presented evidence at the trial that these employment opportunities were lost due to the defendants suspending him without reason.  (N.T. Julie Farling Videotape

_____

[5]The plaintiff's economic expert did use the terms "back pay" and "front pay".  In so doing, however, he referred to the economic loss due to plaintiff's failure to obtain a position with the Pennsylvania State Police or the United State Marshal's Service.  He did not refer to pay lost from plaintiff's employment with the sheriff's department.

10

Deposition: 56, 81-81) (indicating that the Pennsylvania State Police delayed the hiring process in plaintiff's case because they could not believe that he had not been informed the reason for his suspension); N.T. 3/18/09, Plaintiff's Testimony, Doc. 121, 25-26 (indicating that plaintiff had received a conditional job offer with the Marshals, which was no longer available because of his suspension by the defendants).  These two jobs paid more than the plaintiff's job with the sheriff's department.  The jury, therefore, was free to determine that plaintiff suffered an economic loss due to defendants' actions and that he would continue to suffer an economic loss into the future.[6]  In fact, the jury found that plaintiff had suffered $25,000.00 in past economic damages and $100,000.00 in future economic damages.  (Doc. 89, Verdict at ¶ 9).  Therefore, the court did not err in ruling on the motions in limine on these issues or in presenting these issues to the jury.

### c. Plaintiff's expert witness

Defendants also moved in limine to preclude the testimony of plaintiff's economic expert Andrew C. Verzilli, M.B.A with regard to plaintiff's pursuit and/or denial of employment with the Pennsylvania State Police and the U.S. Marshals Service.  The defendants argued in the

--------------------

[6]The case defendants cite in support of their position discusses constitutional issues and whether a property interest arises from employment or potential employment with the Pennsylvania State Police. Altieri v. Pennsylvania State Police, No. Civ.A.98-CV-5495, 2000 WL 427272 (E.D. Pa. April 20, 2000).  The issue in the instant case, however, is not whether plaintiff had a property interest in the relevant employment, but whether he was denied the employment because of the defendants' actions and whether he suffered some monetary harm.

motion in limine that because evidence of these other jobs should be precluded the economist should not be permitted to discuss them. As we found it appropriate at the motion in limine stage to allow the evidence of the lost employment opportunities, no reason existed to preclude the plaintiff from presenting his economic expert.

Defendants now argue that plaintiff's expert testified in a wildly speculative and inappropriate manner. Defendants assert that the plaintiff's expert was not aware of pertinent facts regarding the employment opportunities such as whether there were reasons other than the defendants' actions that precluded these job opportunities. Defendants' argument is without merit. The economist was not charged with the task of determining what factors precluded plaintiff from obtaining these jobs. The expert's task was merely to compute the economic losses plaintiff suffered from these lost opportunities. The jury's task was to determine whether the defendants actually caused these losses. Therefore, whether the economist had pertinent facts regarding the employment at these other places or why plaintiff was precluded from these jobs is immaterial.

In a related argument, the defendants claim that the expert testified to damages in a range from $687,000.00 to $1,657,035.00. The jury awarded a total of $125,000.00 in economic damages. Thus, according to the defendants, the jury's award has no rational relationship to the testimony of the expert. Thus, the award is speculative and must be set aside. We disagree.

Plaintiff's expert presented his testimony and estimates of the damages. The jury's task was to sort through the evidence and award damages that they concluded adequately addressed the harm.

Defendants have cited no law, and our research has uncovered none, for the proposition that if a jury awards damages, it must award at least the minimum in a range provided by the expert economist.[7]  The court cannot ascertain the jury's exact reasoning, but based upon all the evidence in the case, including the credibility of the economic expert and his calculations, the jury found that $125,000.00 was an appropriate award of economic damages.

### d. Defendants' proposed jury instruction 25

Defendants also complain that the court failed to provide a jury instruction that they proposed.  The proposed instruction 25[8] provided as follows:

> Plaintiff claims damages in the nature of lost wages from the Pennsylvania State Police.  Plaintiff was not employed by the Pennsylvania State Police. Pennsylvania requires all new members of the State Police to serve a probationary period of eighteen months from date of original enlistment during which time they may be dismissed by the Commissioner for violations of rules and regulations, incompetency, and inefficiency without action of a court martial

---

[7]In fact, the jury came back with the following question: "Can you advise us on what course of action we can take if the monetary amount cannot be agreed upon?"  (Doc. 86, Jury Question #1).   When faced with this question, plaintiff's counsel indicated, "I think they should go back and figure it out among themselves."  (N.T. 3/25/09, at 2).  To which, defendants' counsel responded, "Yeah."  (Id.)  The court then proceeded to charge the jury generally on attempting to reach an agreement.  Notably, defense counsel did not request that the court charge the jury that they must at least award the minimum amount suggested by the plaintiff's expert witness.

[8]Defendants numbered their proposed jury instructions in such a way that two were numbered 25.  Based on their arguments it is evident that defendants address the second number 25.

board or the right of appeal to a civil court.

(Doc. 54, Defendants' Proposed Points for Charge at 32).

Defendants couch their argument in terms of a "property" right. They assert that plaintiff had no property right to employment with the Pennsylvania State Police, and thus damages for this lost opportunity were inappropriate. We are unconvinced by defendants' arguments. The issue in this case is not whether the plaintiff had a property interest in employment with the Pennsylvania State Police. Rather, the damages issue was whether the defendants prevented the plaintiff from obtaining employment with the State Police and thus harmed him economically.

Defendants were free to argue to the jury that plaintiff would not have been hired by the State Police regardless of the defendants' action. They were free to argue with regard to the requirements of employment with the State Police. For the court to read the proposed charge on a statutory probationary period for State Police Officers, however, was unnecessary and would have been confusing to the jury.

## III. Remittitur of compensatory damages

The jury awarded plaintiff $100,000.00 in past non-economic damages. (Doc. 89, Verdict, ¶ 10.A.). Defendants argue that this amount is excessive and against the weight of the evidence because no evidence was presented that plaintiff's suspension resulted in any emotional distress, embarrassment, humiliation or medical problems to the plaintiff.

The law provides that a "plaintiff in a section 1983 case cannot recover for emotional distress unless he or she presents evidence of 'actual injury.'" Bolden v. Southeastern Pennsylvania Transp. Auth., 21 F.3d 29, 34 (3d Cir. 1994). Expert testimony, however, is not necessary to corroborate a plaintiff's claim for emotional distress. Id. In the instant

14

case, the plaintiff himself testified to the emotional distress he suffered. He testified that the suspension left him feeling very alarmed and "horrible." (Id. at 49 - 50).   He further indicated that he became extremely depressed during the suspension.  (Doc. 121, N.T. 3/18/09 at 61).  He had trouble sleeping.  (Id.)  He did not want to be seen in public, could not face his family and friends and he could not even get himself out of bed or accept phone calls.  (Id. at 61 - 62).  He would not leave his house unless it was absolutely necessary.  (Id.)   Defendants argue that plaintiff's testimony conflicted with other evidence in the case and does not support an award of non-economic damages.  The jury, however, heard the evidence and the arguments of counsel.  The jury then made credibility determinations and made the award of damages as it saw fit.  Based upon the evidence presented, when viewed in the light most favorable to the verdict winner, remittitur of the jury award is not appropriate.

### IV.  Judgment as a matter of law on the due process claim

As noted above, the jury found that Defendant Luzerne County and Defendant Stankus deprived plaintiff of his due process rights in connection with the suspension of his employment between April 2004 and January 2005.  (Doc. 89, Verdict ¶¶ 1-2).  The defendants argue that they are entitled to judgment as a matter of law on this claim.  We disagree.

A party asserting a procedural due process claim must show "that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.' " Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).  In this case, the dispute

involves the second of these questions, and defendants do not argue with plaintiff's contention that their actions deprived him of an interest protected by the Fourteenth Amendment. The jury therefore focused on the question of whether plaintiff received the process he was due in this situation.

"[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'" Cleveland Board of Education v. Loudermill, 470 U.S. 532, 541 (1985) (quoting Morrisey v. Brewer, 408 U.S. 471, 481(1972)). Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances.' " Matthews v. Eldridge, 424 U.S. 319, 334 (1976) (quoting Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961)). Instead, courts are to inquire into the circumstances of the deprivation to determine what process is required.  Id. Accordingly, "'[consideration] of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.'" Wolff v. McDaniel, 418 U.S. 539, 560 (1974) (quoting McElroy, 367 U.S. at 895).

Three factors generally guide this determination:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Matthews, 424 U.S. at 335.

The Third Circuit Court of Appeals has concluded that "[a]t a minimum, due process requires notice and a hearing." Wilson v. MVM, Inc., 475 F.3d 166, 178 (3d Cir. 2007).  Still, "when that notice and hearing

must be provided and how intensive the hearing must be is a determination that depends on the balancing of [the] three interests" articulated in Matthews. Id.

In the instant case, it is undisputed that the plaintiff did not receive a hearing prior to his suspension. "[I]t is fundamental that except in emergency situations . . . due process requires that when a State seeks to [deprive a person of] (a protected) interest . . ., it must afford notice and opportunity for hearing appropriate to the nature of the case before the [deprivation of the interest] becomes effective." Dee v. Borough of Dunmore, 549 F.3d 225, 232 (3d Cir. 2008) (quoting Board of Regents v. Roth, 408 U.S. 564, 569-70 n.7 (1972).

As noted, pre-deprivation hearings are not necessary in emergency situations. Defendants argue that "their interest in protecting the safety of their citizens far outweighed Plaintiff's interest in having a hearing before he was suspended[.]" (Doc. 129, Defendants' Amended Brief at 30). Defendants presented evidence regarding this defense and argued it to the jury. (Doc. 125, N.T. 3/24/09 at 55 - 58).[9] Additionally, the court instructed the jury on this issue. (Id. at 92) ("It is fundamental that except in emergency situations due process requires that a state actor must provide notice and an opportunity for a hearing appropriate to the nature of the case before the deprivation. In extraordinary situations where some valid governmental interest is at stake, it is permissible to postpone the hearing until after the deprivation. In such situations, the interest asserted by the

---

[9]Defendants' argument as to the emergency need to suspend the plaintiff involved allegations that he had been involved in several altercations at various night clubs while off duty. (Doc. 125, N.T. 3/24/09 at 55 - 58).

government must be weighed against the plaintiff's interest in having a hearing before the deprivation.").

The jury in the instant case, heard the evidence and arguments of counsel. They received appropriate instructions from the court. Ultimately, the jury rejected the defendants' argument and found a due process violation. No error is apparent. No reason exists to overturn the jury's due process verdict. The court therefore rejects defendants' argument on this issue.

For the foregoing reasons, the court will deny, in all respects, the defendants' motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. An appropriate order follows this memorandum.

We now turn our attention to the plaintiff's motion for attorney's fees and costs.

## B. Plaintiff's motion for attorney's fees and costs
### Discussion

The court has discretion to award "a reasonable attorney's fee" to prevailing parties in civil rights actions. 42 U.S.C. § 1988. To determine the amount of a "reasonable fee," the court first calculates the "lodestar" which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." McKenna v. City of Phildadelphia, 582 F.3d 447, 455 (3d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Excluded from the lodestar calculation are hours not reasonably expended including "excessive, redundant, or other unnecessary" hours. Id.

In the instant case, the parties agree that an hourly rate is $375.00 is

reasonable for plaintiff's counsel Barry H. Dyller. (Doc. 107-2, Defendants' Brief at 4 ("Defendants will accept, for purposes of this motion only, based upon the facts and evidence of this case, the hourly rate of $375.00 for Mr. Dyller as being reasonable."). Attorney Dyller states that he spent 497.00 hours on the case up until the post-trial stage, for a total of $186,375.00. (Doc. 102, ¶ 5). The petition also seeks 4.75 hours at 375.00 per hour, a total of $1,781.25, for preparing the fee petition. (Id. at par 8). The total set forth in the original petition for Attorney Dyller is therefore $188,156.25. The petition for fees further asserts that plaintiff's attorney Kelly A. Bray spent six hours on the case at $215.00 per hour for a total of $1,290.00. (Id.) Lastly, paralegal Nancie Redmond spent 66.25 hours on the case at a rate of $90.00 per hour. Redmond's total is thus $5962.50. (Id.) Summing up these totals, plaintiff suggests a lodestar amount of $195,408.75. (Id.)

In three supplemental filings plaintiff indicates further hours spent on the case post-verdict: 94.25 hours for Attorney Dyller at $375.00 per hour; 2.25 hours for Lesa Gelb at $350.00 per hour and 0.5 hours for Attorney Johanna Gelb at $350.00 per hour. (See Doc. 111, 117, and 131). These total up to $35,343.75 for Attorney Dyller; $787.50 for Attorney Lesa Gelb and $175.00 for attorney Johanna Gelb. The total of the supplemental fees is $36,306.25. The supplemental fees added to the original fee $195,408.75 equals $231,715.00. Plaintiff also seeks costs in the amount of $6,398.52. (Doc. 102 at ¶ 6). The total amount sought, therefore, is $238,113.52. (Doc. 131at ¶ 8). A reduction of this amount is appropriate. Plaintiff agrees with the defendants that his calculation of mileage reimbursement is off by .035 dollars per mile. Plaintiff thus agrees to a

$28.42 reduction to adjust for this error.  (Doc. 110, Plaintiff's Reply Brief at n.8, 22-23).   Accordingly, plaintiff seeks a total of $238,085.10, and we will use this amount as the "lodestar."

Defendants advance a three-pronged argument with regard to plaintiff's request for attorney's fees.  They argue: 1) plaintiff was not a prevailing party; 2) certain time/expenses are vague and/or are excessive; and 3) paralegal time should be cut.  We will address these issues separately.

### I.  Prevailing party

Plaintiff commenced the instant action in March 2007 by filing a complaint.  Plaintiff filed a "Supplemental and Amended Complaint" on August 20, 2007 (Doc. 16).  This amended complaint raised the following issues: 1) a First Amendment violation regarding plaintiff's suspension; 2) a Due Process violation regarding plaintiff's suspension; 3) a First Amendment retaliation regarding plaintiff's termination; and 4) a Due Process violation with respect to plaintiff's termination.  (Id.).   Plaintiff also pursued an Equal Protection claim.  (Doc. 48, Plaintiff's Pretrial Memorandum at 14).  At some point prior to the case going to the jury, plaintiff withdrew the Equal Protection claim and the Due Process claim regarding plaintiff's termination.

The jury, therefore, addressed only the following four issues:  Due Process with regard to the suspension; First Amendment Association rights regarding the suspension; First Amendment Association rights with regard to the termination; and First Amendment retaliation regarding the termination.  The jury found for the plaintiff on only one of these causes of action, the Due Process claim regarding the suspension.  Defendants

argue that plaintiff initially pursued five causes of action, he tried only four of them and the jury found the defendants liable on only one of them. Therefore, plaintiff only prevailed on one issue not the whole case.  The hours attributable to claims that plaintiff was not successful on should not be included in the lodestar according to the plaintiff. Defendants' position is that plaintiff was only successful on twenty (20) percent of his claims and the request fee should be reduced by eighty (80) percent.   We disagree.

The law provides: "[A]n attorney's work on unsuccessful claims not related to the claims on which the attorney succeeded is not compensable, because such work cannot be deemed to have been expended in pursuit of the ultimate result achieved." " McKenna, 582 F.3d at 455 (internal citation and quotation marks omitted).  The Third Circuit Court of Appeals has further explained:

> '[T]he District Court has a positive and affirmative function in the fee fixing process, not merely a passive role' and 'should reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed, that were distinct from the claims on which the party did succeed, and for which the fee petition inadequately documents the hours claimed.' Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 178 (3d Cir. 2001).

McKenna, 582 F.3d at 455.

Defendants are correct therefore, in asserting that the plaintiff is not entitled to the complete fee that he requests.  We disagree, however, that he was only successful on twenty (20) percent of his claims.  The case is more logically be broken down into two parts, the suspension and the termination.  The jury found that defendants violated plaintiff's rights with regard to the suspension, but did not violate plaintiff's rights with regard to

the termination.  Plaintiff, therefore, was fifty (50) percent successful.[10]  We will thus reduce the lodestar amount by fifty (50) percent.[11]  After the amount sought by plaintiff is halved, the amount due is $119,042.55.

## II.  Vague/Excessive hours

Defendants argue that vague entries in the fee petition, are inadequate to support the work performed or whether the work related to prevailing claims.  Defendants argue these issues in the alternative to the court using a percentage of unsuccessful claims.  (Doc. 107-2) ("Should this court not provide a reduction based upon the percentage of unsuccessful and unrelated claims, Defendants seek the following reductions[.]").  We have, however, granted a percentage deduction based upon successful and unsuccessful claims.  Therefore, we need not address this issue.

## III.  Paralegal time

Plaintiff's petition for attorney fees and costs seeks to recover for time a paralegal used to: 1) prepare a chart that was not used a trial, 2) 'practice' with video equipment and 3) attend trial.  Defendants argue that this work was either duplicative or unnecessary and that plaintiff's fee petition should not be granted with respect to these matters.  After a careful review, we disagree.

---

[10]Defendants would have us break the suspension claim down into the First Amendment claim and the Due Process claim.  These two claims are so inter-related, however, it would not be reasonable to break the case down any further because of success on one claim and failure on the other.

[11]Defendants seek a reduction of the costs also based on the same theory.  We will also reduce the award of costs by fifty (50) percent.

First, defendants complain of a chart that the paralegal prepared relating to plaintiff's lost income and "growth" pay. Defendants argue that this matter is inappropriate for a fee petition because plaintiff retained an expert on these issues who prepared and testified to his own charts. Plaintiff points out, however, that the paralegal-constructed chart was utilized in a mediation of this matter. (Doc. 110, Plaintiff's Reply Brief at 18 - 19). Plaintiff did not retain an economic expert until after this mediation failed. Accordingly, we find that this chart used in an effort to settle the case is compensable.

Second, defendants argue that the paralegal's attendance at trial was unnecessary and that plaintiff should not be compensated for it   We find that defendants' position is without merit. Plaintiff's counsel did not have a lawyer to "second chair" the trial. Instead, the paralegal assisted him. We find that this time is compensable. It is not unreasonable to reimburse the plaintiff for this cost.

Last, defendants challenge plaintiff's claim for compensation for his paralegal's practice with video equipment in the courtroom. We find that this matter is properly compensable. It is important that technological matters proceed smoothly during trial. Thus, it was important that someone on the plaintiff's team be familiar with the technological aspects of the presentation. In fact, defendants note that defendants' counsel even requested that his paralegal provide assistance in making her own video presentation. (Doc. 110, Plaintiff's Reply Brief at 20). Accordingly, we find defendants' objection to this portion of the fee petition to be without merit.

**Conclusion**

Plaintiff's petition for attorney's fees and costs will be granted. For

the reasons set forth above, however, the plaintiff's requested attorney's fees and costs will be reduced by fifty (50) percent.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

NORMAN SALLITT, JR.,
      **Plaintiff**

  **v.**

BARRY STANKUS, LUZERNE
COUNTY, and GEORGE KAMAGE, JR.,
      **Defendants**

:   No. 3:07cv361
:
:   (Judge Munley)
:
:
:
:
:

## <u>ORDER</u>

  **AND NOW**, to wit, this 26th day of May 2010, the defendants' motion for a judgment as a matter of law pursuant to Fed. R. Civ. P. 50 (Doc. 105) is hereby **DENIED**  and

  The plaintiff's motion for attorney's fees and costs (Doc. 100) is **GRANTED**, in part.  The defendants are **ORDERED** and **DIRECTED** to pay plaintiff attorney fees and costs in the amount of $119,042.55.

        **BY THE COURT:**

        **s/ James M. Munley**
        **JUDGE JAMES M. MUNLEY**
        **United States District Court**